The opinion of the court was delivered by
Blanchard, J.
In 1822 an act of the Legislature was passed creating the parish of Terrebonne out of a portion of the territory then forming what was called the Lafourche Interior. The act specifically defined the boundaries of the new parish. Subsequently, by act of the Legislature passed in 1850, the western boundary of the parish of Terrebonne was altered.
Dispute arose between the mother parish and her offspring as to-the true location of the eastern boundary of the younger parish, and in 1881 this culminated in the institution of a suit by the parish of' Lafourche against the parish of Terrebonne, the object of which was to have judicially ascertained and established the line between the-two paidshes as defined by the act of the Legislature.
The oause of this dispute was the ambiguity of language describing the eastern boundary limits of the new parish in the act of 1822.
Between the respective contentions of plaintiff and defendant was a strip of country constituting the disputed territory, and to definitely settle and determine to which parish it rightfully belonged was-the purpose of the suit.
The case was tried in the parish of Terrebonne, and there was judgment sustaining the contention of defendant. An appeal was-taken to this court, and, in April, 1882, an opinion and decree was handed down reversing the judgment below, and establishing the boundary line in accordance with the contention of the plaintiff. See 34 An. 1230.
A rehearing applied for was refused, the judgment became final,. *1333 and, thereafter, owners of property in the disputed territory paid taxes in the parish of Lafourche, their acts of sale and mortgages were recorded there, electors voted and performed jury duty therein, and the public schools, bridges and roads of that section passed under the control and jurisdiction of the parish of Lafourche.
Matters continued thus for a period of twelve years, or until 1894, when another litigation sprung up between the parishes. This time it was over the oyster beds in Timbalier Bay.
Again the mother parish of Lafourche took the initiative against her dissentious offspring. A suit was filed in the parish of Terre-bonne setting forth that in the previous litigation the location of the boundary line between the parishes had been definitely and finally fixed and that the same was res judicata. It was claimed that this boundary line on the southwest of Lafourche and the southeast of Terrebonne was a stream called Bayou du Ohene (otherwise known as Bayou Point au Ohien and sometimes as Bayou du Ohien), which empties into Timbalier Bay at its northern extremity, the prolonga - tionof which line through the waters of the bay would about equally •divide the 'bay and result in giving the eastern part thereof to the parish of Lafourche and the western part to the parish of Terre-bonne.
The averment was made that in that portion of the bay falling on the Lafourche side of the line were valuable oyster beds, which, notwithstanding the previous suit and decision, the defendant parish continued to assert title to and dominion and control over, by claiming the right to issue and by issuing licenses to those who pursue the vocation of oyster fishermen in that part of the bay.
Judgment was asked decreeing the boundary line between that portion of the parishes, as fixed by the final decision of this court, to be a line prolonged from the mouth of Bayou Chene through Tim-balier Bay, and awarding all the oyster bids on the east of such line ■to the plaintiff parish, etc.
In this litigation an attempt was made by defendant to revive and have passed upon anew the same issues raised and decided in the previous litigation twelve years ago. In addition thereto, the answer of the defendant averred that the judgment of this court in the first litigation was an absolute nullity as undertaking to legislate and not to decide.
Plaintiff, insisting on its plea of res judicata as to the boundary *1334 line fixed and determined by the judgment of this court in 1882,, objected to all evidence tending to reopen that question. Much testimony was, however, admitted covering the whole range of the boundary dispute, the judge a quo holding that the objection went to the effect rather than to the admissibility of the evidence, and bills of exception were taken by plaintiff.
The judgment of the court below was favorable to plaintiff. It was held that an analysis of the pleadings and judgments of the prior litigation demonstrated that, in so far as the boundary line was concerned, the same issues were tried and determined there as are now sought to be raised afresh in the instant case.
Plaintiff’s plea of res judicata was sustained.
With regard to defendant’s attack upon the final judgment of the first suit it was held that when the only ground of nullity advanced consists in error of decision upon the issues involved, the judgment upon those issues by a competent court operates as a conclusive estoppel between the parties before the court, and that the case at bar comes within that rule.
An appeal was taken by defendant to this court, and, in June, 1896, after full consideration, it was deemed advisable to reverse the judgment and remand the case to the lower court for another trial. Accordingly this was done. In remanding, no instructions were given. See 48 An. 1302.
In February of the present year the case was again tried in the court below on the same issues and evidence, together with additional testimony adduced on behalf of both parties.
Again was it decided in favor of plaintiff, and for the second time it is before us on appeal by defendant.
A full review of the case has brought us to the conclusion that the learned judge of the court below has properly expounded and applied the law that must govern*ts determination.
The plea of res adjudieata contended for by plaintiff, founded on the judgment of this court in the case of The Parish of Lafourche vs. The Parish of Terrebonne, 34 An. 1230, must be sustained. The boundary line between plaintiff parish and defendant parish, as construed, set forth, fixed and determined by that decision, must be upheld as having the authority of the thing adjudged.
It is well settled that a defence, having been urged, and decided adversely, in a former suit, can not be set up again in a second suit *1335 between the same parties and on the same cause of action. 12 An. 197, 591; 11 An. 287; 19 La. 318; 35 An. 553; 40 An. 645; 36 An. 400; 26 An. 321; 38 An. 669; 144 U. S. 610; 152 U. S. 327; 94 U. S. 351; 113 U. S. 179.
Every material allegation or statement which, having been made on one side and denied on the other, was at issue in the cause and was determined in the course of -proceedings, is merged in rem adjuicatum. Aurora City vs. West, 7 Wallace, 103; Gould vs. Evansville R. R. Co., 91 U. S. 533.
The same issues, finally determined between the parties, can not be again raised, even on the ground of the subsequent discovery of new evidence. Gusman vs. De Poret, 33 An. 333.
Nor would it make any difference that the judgment pleaded in estoppel may have been erroneous. Res adjudicata pro veritate habitur. State ex rel. Plaisent vs. Railroad Co., 38 An. 312; Heroman vs. Institute, 34 An. 813.
Defendant’s attack of nullity upon the judgment pleaded as res adjudieata can avail nothing. The ground of nullity advanced can be held to be no other than error of decision upon the issues involved. Where this is the case, a decision upon those issues by a competent court operates as estoppel between the parties to the litigation. 34 An. 813.
A careful re-examination of the opinion and decree of this court in the former case (34 An. 1230) leads us to the further conclusion that there is no such ambiguity or conflict in the terms thereof as. requires construction or interpretation at our hands.
It definitely fixes “ Bayou Blue Water, otherwise known as Bayou du Chene,” as the lower boundary between the parishes “ following its right bank to the sea.”
So that at the sea, or Timbalier Bay, the point of division between the parishes is the mouth of said bayou.
It follows that the prolongation of this line across Timbalier Bay would properly partition the waters of the bay between the parishes, giving to the parish of Lafourche the oyster beds on the east of that line, and to the parish of Terrebonne those on the west of the line. '
As to which “BayouBlue,” or “Blue Water,” is meant in the opinion of the court in the 34th Annual as being intended to represent in part the divisional line, is perfectly clear. Plaintiff in that suit had *1336 •contended for a certain “ Bayou Blue” which took its rise near the town of Thibodeauxvilie. Defendant had contended for a “Bayou Blue Water” east of the first and nearer to Bayou Lafourche. The ■court distinctly rejected, as forming any part of the divisional line, the bayou insisted upon by defendant, and as distinctly adopted, as part of the line, the bayou urged by the plaintiff. Several of the ■maps (of an early period of the State) filed in that case, as well as in the present case, show the connection between Bayou Blue and a bayou called “ du Chene ” or “ Ohien,” and locate them as one and •the same stream, the upper part being called Bayou Blue, and the lower part Bayou du Chene or Ohien, flowing to the sea.
On this showing, and construing the act of the Legislature defining the boundary between the parishes, the court in the earlier case -adopted plaintiff’s “Bayou Blue,” with its continuation, “Bayou du Chene,” as the true “ Bayou Blue Water ” mentioned in the act of 1822, as forming part of the divisional line.
We are far from intimating that the court erred in determining ■this particular “Bayou Blue” and “Bayou du Chene” to be the “Bayou Blue Water” referred to by the Legislature, but, even if this be error, we have shown it can not detract from the force of the judgment as res judicata.
There being no room for doubt as to the intention of the opinion and decree of the court in the earlier case, with regard to the bayou in question, the force and effect of that judgment can not be dissipated on the plea of interpreting and making clear what is already free from ambiguity.
The defendant seems to occupy the inconsistent position of asserting that the boundary line established by this court in the earlier case is the boundary line it claims, and yet of averring in its answer that the judgment establishing the same is an absolute nullity as undertaking to legislate and not to decide. It would not ask to have this judgment decreed a nullity, as was done in its supplemental answer, if it believed there was any force in its contention that it really established, or intended to establish, the divisional line it claims as the true one.
The judgment appealed from must be affirmed, and, accordingly, ■that decree is hereby entered.